USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BRUCE R. BENT II,

       Plaintiff,

   -v-

ZOUNDS HEARING FRANCHISING, LLC, ZOUNDS
HEARING, INC., SAMUEL L. THOMASSON, and
FRAN CHOICE, INC.,

       Defendants.

------------------------------------------------------------X

15 Civ. 6555 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  This decision addresses a motion to transfer venue to Arizona. Plaintiff Bruce Bent II brought this lawsuit against defendants Zounds Hearing Franchising, LLC ("Zounds Hearing"), Zounds Hearing, Inc. ("Zounds Inc."), Samuel L. Thomasson, and FranChoice Inc. ("FranChoice") (collectively, "defendants") in New York State Supreme Court, alleging violations of the anti-fraud provisions of the New York Franchise Sales Act (the "NYFSA"), N.Y. Gen. Bus. Law §§ 687, 691, as well as fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and breach of contract. Defendants removed the case to federal court. Zounds Hearing, Zounds Inc., and Thomasson (collectively, "Zounds") now move to transfer all claims against these three defendants to the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion to transfer venue is granted.

**I.     Background**[1]

    **A.     Factual Background**

This case arises out of 10 franchise agreements entered into between the parties, as well as alleged representations made by the parties before and during the performance of the agreements.

Bent is a resident of New York State. Compl. ¶ 2; Zounds Br. 1. Zounds Hearing is an Arizona limited liability company, with a principal place of business in Arizona, which grants franchises for the right to own and operate a retail hearing aid business. Compl. ¶ 3; Zounds Br. 2. Zounds Inc. is a Delaware corporation, with a principal place of business in Arizona, which offers and sells hearing aid devices to franchisees, and is the parent and sole member of Zounds Hearing. Compl. ¶ 4; Zounds Br. 2. Thomasson is a resident of Arizona, the Business Development Advisor and sole manager of Zounds Hearing, and the founder and CEO of Zounds Inc. Compl. ¶ 5; Zounds Br. 3. FranChoice is a Minnesota corporation, with a principal place of business in Minnesota, which provides franchise consulting services for prospective franchisees. Compl. ¶ 6.

---

[1] In deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden of justifying a change of venue. *See, e.g.*, *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *Mastercard Int'l, Inc. v. Lexcel Sols., Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004) (relying on defendant's declarations in granting motion to transfer). Accordingly, in deciding this motion, the Court considers Bent's complaint, Dkt. 25, Ex. 1 ("Compl."), as well as Zounds' briefs in support of the motion to transfer, Dkt. 22 ("Zounds Br."); Dkt. 30 ("Zounds Reply Br."), and the attached exhibits, including one entire Franchise Agreement, Dkt. 22, Exs. 2, 3 ("FA"), the signature pages of the nine remaining Franchise Agreements, FA, Ex. A, the Franchise Agreement Addendum, Dkt. 22, Ex. 4 ("Addendum"), and the affidavits of Samuel L. Thomasson, Dkt. 22, Ex. 6 ("Thomasson Aff."), Dean Essa, Dkt. 22, Ex. 5 ("Essa Aff."), and William R. Graefe, Dkt. 31, Ex. 1 ("Graefe Aff.").

In summer 2013, Bent contacted FranChoice regarding his interest in purchasing a franchise. Compl. ¶ 11. On FranChoice's recommendation, Bent contacted Thomasson to learn about the Zounds franchise, and attended a discovery day at Zounds' headquarters in Arizona. Compl. ¶¶ 11–13, 17–18; Zounds Br. 3.

On or about September 13, 2013, Bent, on behalf of his company, B2 Hearing, executed franchise agreements (the "FAs") to buy 10 Zounds franchises for a total of $240,000. Compl. ¶ 20; Zounds Br. 4; Essa Aff. ¶ 11; FA; FA, Ex. A. Bent signed a form of guaranty attached to each of the FAs (the "Guaranties"), in which he agreed to personally guarantee, as well as be personally bound by, each of B2 Hearing's obligations under the FAs. Zounds Br. 4; FA, Ex. B, Art. I. Finally, Bent signed, in his personal capacity, an Addendum to the FAs, which designated Bent as "Franchisee" under the FAs, and contained other modifications to the FAs based on the parties' negotiations. Zounds Br. 3–4; Essa Aff. ¶¶ 9–12.

> Each of the FAs contains the following forum-selection clause:
>
> Except for [certain claims initiated by Zounds], the parties agree that any actions arising out of or related to this Agreement must be initiated and litigated in the state court of general jurisdiction closest to Phoenix, Arizona or, if appropriate, the United States District Court for the District of Arizona. Franchisee acknowledges that this Agreement has been entered into in the State of Arizona, and that Franchisee is to receive valuable and continuing services emanating from Franchisor's headquarters in Arizona . . . . In recognition of such services and their origins, Franchisee hereby irrevocably consents to the personal jurisdiction of the state and federal courts of Arizona as set forth in this Section.

FA ¶ 22(E). Each of the Guaranties contains the following forum-selection clause:

> With respect to any proceeding not subject to mediation, the parties agree that any action at law or in equity instituted against either party to this Agreement must be commenced and litigated to conclusion (unless settled) only in any court of competent jurisdiction located closest to Phoenix, Arizona or, if appropriate, the United States District Court for the District of Arizona. The undersigned hereby irrevocably consents to the jurisdiction of these courts.

3

FA, Ex. B, Art. IV, § 5.  The Addendum includes the following integration clause, which incorporates the forum-selection clause contained in the FAs:

> The Franchise Agreements and this Addendum constitute the entire, full, and complete agreement between the parties concerning the franchise and supersedes any and all prior agreements.  In the event of a conflict between the terms of the Franchise Agreements and this Addendum, the terms of this Addendum shall control.  Except as amended by this Addendum, all the other terms and conditions of each Franchise Agreement are hereby ratified and confirmed, including the provisions related to governing law, venue and dispute resolution that will also apply to this addendum.

Addendum ¶ 17.

Pursuant to the Addendum, Bent wired Zounds an upfront payment of $240,000.  Compl. ¶ 22; Essa Aff. ¶ 11.  However, Bent alleges, Zounds later failed to carry out its obligations under the FAs or to fulfill the promises made by Thomasson and other Zounds representatives in connection therewith.  Compl. ¶¶ 23–29.  In 2014, Bent requested that Thomasson return Bent's $240,000 advance payment until Zounds fulfilled its initial obligations and Bent's franchises were open for business—a reimbursement which, Bent claims, was required by the New York Attorney General's mandate prescribing deferral of initial franchise fees.  *Id.* ¶ 30.  When Thomasson refused, Bent opened an independent hearing aid center in one of the franchise territories.  *Id.* ¶ 31; Zounds Br. 8.

After Zounds declined to subject Bent's claims to mediation, *see* Compl. ¶ 30; Essa Aff. ¶ 3, Bent brought this lawsuit.  Bent alleges that defendants made fraudulent and/or negligent misrepresentations about the Zounds franchise system, which induced Bent to purchase the 10 Zounds franchises, and that Zounds failed to perform its obligations under the FAs.  Compl. ¶¶ 33–58.

### B.     Procedural History

On July 28, 2015, Bent filed a complaint in New York State Supreme Court, alleging violations of N.Y. Gen. Bus. Law §§ 687 and 691, and fraudulent inducement, fraudulent and/or negligent misrepresentation, and breach of contract.  *See* Dkt. 1.  On August 19, 2015, Zounds filed a notice of removal pursuant to 28 U.S.C. § 1446.  *Id.*[2]  On September 24, 2015, FranChoice filed a motion to dismiss the complaint.  Dkt. 16.  On October 1, 2015, Zounds filed both a motion to transfer and a motion to dismiss the complaint, Dkt. 21, and a memorandum of law in support, Dkt. 22.

On October 6, 2015, the Court notified the parties that it would resolve the motion to transfer before considering, if necessary, the motions to dismiss, and directed Bent to file an opposition only as to that motion.  Dkt. 24.  On October 16, 2015, Bent filed a memorandum of law in opposition to the motion to transfer, Dkt. 26 ("Bent Br."), as well as a declaration of Bent's counsel, Dkt. 25.  On October 29, 2015, Zounds filed their reply.  Zounds Reply Br.

## II.    Legal Standards Governing Transfer Under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . or to which all parties have consented."

In general, § 1404(a) gives district courts wide latitude to decide whether to transfer venue.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011).  In deciding a motion to transfer, a court should first inquire "whether the action could have been brought in the

---

[2] On August 27, 2015, FranChoice consented to the removal.  Dkt. 13.

transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).

Assessing whether transfer is a valid exercise of discretion ordinarily requires the court to balance various factors, including:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Robertson*, 2011 WL 5175597, at *4; *see also Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) (quoting *Stewart*, 487 U.S. at 31). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that the transfer to the forum for which the parties bargained is unwarranted." *Id.* Because the plaintiff is deemed to have exercised its venue choice at the time of contracting, the court is to accord the plaintiff's present choice of forum no weight, and "must eschew consideration of private interests in favor of public interest factors only." *In re Residential Capital, LLC*, 527 B.R. 865, 873 (S.D.N.Y. 2014) (citing *Atl. Marine*, 134 S. Ct. at 581–83; *see also In re Refco*

*Inc., Secs. Litig.*, No. 08 Civ. 3086 (JSR), 2009 WL 5548666, at *5 (S.D.N.Y. Nov. 16, 2009) ("Both the Supreme Court and the Second Circuit have recognized that forum-selection clauses have economic value and should be enforced in accordance with the expectations of the parties.") (collecting cases).  "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 134 S. Ct. at 581.

**III.    Discussion**

In support of its motion for transfer to the District of Arizona, Zounds argues that the parties are bound by what it claims is the enforceable and mandatory forum-selection clause in each of the 10 FAs, as incorporated in the Addendum, and the Guaranties.

When assessing a motion to transfer on the basis of an alleged forum-selection clause, "the Court must consider, first, whether the forum-selection clause is valid and, second, whether public interest factors nevertheless counsel against its enforcement." *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 Civ. 8089 (RJS), 2014 WL 1116875, at *3 (S.D.N.Y. March 18, 2014). The Court addresses these issues in turn.

    **A.    The Forum-Selection Clause Contained Within the Franchise Agreements Is Valid and Enforceable in the Present Action**

The enforceability of a forum-selection clause is determined by federal law. *Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014).  A forum-selection clause is "presumptively enforceable" if the moving party can demonstrate that: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  If these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a "sufficiently strong showing that

enforcement would be unreasonable or unjust, or that the clause was invalid." *Martinez*, 740 F.3d at 21 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).

### 1. The Forum-Selection Clause in the Franchise Agreements, as Incorporated in the Addendum, Was Reasonably Communicated to Bent

In this Circuit, courts assume that a forum-selection clause stated in clear and unambiguous language was reasonably communicated to the plaintiff. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (collecting cases). Here, Zounds argues that the forum-selection clause contained in the 10 FAs was reasonably communicated to Bent because: (1) Zounds provided Bent with the FAs, each containing the forum-selection clause, at least 14 days before their execution; (2) Bent engaged counsel to review the FAs and to assist Bent in negotiating the terms of the FAs with Zounds—an effort that resulted in the Addendum, which modifies various provisions of the FAs, although not the forum-selection clause; and (3) the wording of the clause is unambiguous. Zounds Br. 10–11; Essa Aff. ¶¶ 8–12.

Bent does not dispute that the forum-selection clause in the FAs unambiguously requires litigation in Arizona, or that he had a substantial opportunity to review the agreements in their entirety. In light of the clause's clear text and the evidence of arm's-length negotiations between the parties, each assisted by counsel, the Court finds that the forum-selection clause was reasonably communicated to Bent.

### 2. The Forum-Selection Clause is Mandatory[3]

"A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386.

---

[3] In general, where a contract contains both a choice of law clause and a forum-selection clause, a federal court interpreting the forum-selection clause is to apply the body of law specified in the contract. *Martinez*, 740 F.3d at 220. However, as the Second Circuit held in *Martinez*, where

Bent does not dispute that the forum-selection clause contained in the FAs is couched in obligatory language. Indeed, it would be difficult to do so, as the clause unequivocally provides that any covered actions "*must* be initiated and litigated" in Arizona. FA ¶ 22(E). The Court thus has no trouble concluding that the clause is mandatory, rather than permissive. *See Phillips*, 494 F.3d at 383 (in determining whether a forum-selection clause is mandatory, court must decide "whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so" (emphasis in original)).

### 3. The Forum-Selection Clause Binds the Parties and Encompasses Bent's Claims

The third prerequisite for presumptive enforceability is that "the claims and parties involved in the suit are subject to the forum-selection clause." *Phillips*, 494 F.3d at 383. Bent argues that neither he nor his claims are subject to the forum-selection clause at issue here. The Court holds otherwise.

Bent first argues that, because he did not sign the FAs in his personal capacity, he is not bound by the forum-selection clause in them. Bent Br. 7. This argument is unpersuasive. It is true that Bent executed each FA on behalf of his company, B2 Hearing, as "Franchisee," rather than on his own behalf. *See* Zounds Reply Br. 1; Zounds Br. 4; FA at 47; FA, Ex. A. But, as Bent concedes, he signed the Addendum in his individual capacity. *See* Bent Br. 3, 8;

---

the parties do not "urge[] the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum-selection clause," it is appropriate for the court "not to 'rely on any distinctive features of [the selected law] and [instead to] apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause.'" *Id.* at 223 (quoting *Phillips*, 494 F.3d at 386). Here, the FAs provide that Arizona law will govern the agreements. FA ¶ 22(A). Nevertheless, the parties each cite precedents from disparate federal courts, presumably based on the conclusion that the decisive legal principles do not vary across courts.

Addendum at 4.  Moreover, the Addendum, which expressly supersedes the FAs, *see* Addendum ¶ 17 ("In the event of a conflict between the terms of the Franchise Agreements and this Addendum, the terms of this Addendum shall control."), designates "Bruce Bent II, Individually" as the franchisee, *id.*; *see also* Graefe Aff. ¶ 2 (Zounds' counsel noting that Bent and Bent's counsel specifically requested that Bent be designated as "Franchisee" in the Addendum).

The Addendum's integration clause alone would likely render Bent, as franchisee, subject to the FAs, and thereby bound by the forum-selection clause.  But it is unnecessary to resolve that point, because the Addendum also specifically incorporates by reference the forum-selection clause in the FAs.  Provision 17 expressly "ratifies" and "confirms" all terms and conditions of the FAs not modified by the Addendum, "including the provisions relating to governing law, venue and dispute resolution that will also apply to this Addendum."  Addendum ¶ 17.  Bent is thereby clearly bound by the forum-selection clause as to all actions arising out of and relating to both the FAs and the Addendum.  *See Angeles v. Norwegian Cruise Lines, Inc.*, No. 01 Civ. 9441 (RCC), 2002 WL 1997898, at *4 (S.D.N.Y. Aug. 29, 2002) ("Because Plaintiff's Contract incorporates by reference [a separate contract containing a forum-selection clause], the forum-selection clause is a term of the Contract."); *New Gold Equities Crop. v. Capital Growth Real Estate, Inc.*, No. 89 Civ. 5472 (LBS), 1990 WL 1272, at *2 (S.D.N.Y. Jan. 2, 1990) (rejecting argument that forum-selection clause in one contract cannot be incorporated by reference into another contract).

Bent separately argues that the clause does not bind him as to his claims against Zounds Inc. and Thomasson, neither of which executed the FAs or the Addendum.  (Zounds Hearing, in contrast, is a signatory to the FAs and the Addendum.)  Nevertheless, these two defendants, too, are bound by the forum-selection clause contained therein.  "[T]he fact a party is a non-signatory

to an agreement is insufficient, standing alone, to preclude enforcement of a forum-selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). That is because "[a] literal approach to interpreting forum selection clauses—an approach that always ignored affiliates of the signatories—could . . . undermine the contribution that such clauses have been praised for making to certainty in commercial transactions." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (quoting *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 441 (7th Cir. 2012)) (internal quotation marks omitted). Accordingly, the Second Circuit has held that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory," such that "the non-signatory's enforcement of the forum selection clause is 'foreseeable.'" *Id.* at 723. Non-signatories are deemed "closely related" to signatories where their "interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011) (collecting cases).

The "closely related" standard is met here. Zounds Inc. is the parent and sole member of Zounds Hearing. Compl. ¶ 4; Zounds Br. 2. And Thomasson is the Business Development Advisor and sole manager of Zounds Hearing, and founder and CEO of Zounds Inc. Compl. ¶ 5; Zounds Br. 3. Further, Bent's claims against the three defendants are "nearly identical," and arise out of a common transaction involving all three defendants. *See Novak v. Tucows, Inc.*, No. 06 Civ. 1909 (JFB), 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d Cir. 2009) (non-signatory was bound by forum-selection clause where claims against it were "nearly identical" to those against signatory defendant, and all claims arose out of the same transaction involving both defendants). Notably, in the complaint, Bent does not distinguish

11

between the actions of Zounds Hearing and Zounds Inc., referring to the two defendants collectively as "Zounds." *See* Compl. ¶¶ 4, 19, 23, 28–29. Bent also claims that the three defendants acted in concert to defraud Bent for Zounds' benefit. *See id.* ¶ 36; *Weingard v. Telepathy, Inc.*, No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005) ("closely related" test was satisfied where plaintiff alleged that defendants acted in concert, sued defendants together in all but one claim, and all claims arose out of defendants' relationships with one another). As for Thomasson, each of Bent's claims against him—constituting three of Bent's four total claims—is brought against Thomasson in his corporate, rather than personal, capacity. *See* Compl. ¶¶ 33–58; *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 311 (S.D.N.Y. 2012) (corporate officer was bound by forum-selection clause in corporation's contract, where he participated in, and stood to benefit from, the underlying transaction); *Thibodeau v. Pinnacle FX Invs.*, No. 08 Civ. 1662 (JFB), 2008 WL 4849957, at *5 n.4 (E.D.N.Y. Nov. 6, 2008) (foreseeable to plaintiff that forum-selection clause would apply to any lawsuit against principals of the signatory corporation in connection with their work at the corporation). It was thus fully foreseeable to Bent that Zounds Inc. and Thomasson might seek to enforce the forum-selection clause in an action such as this.

Bent next argues that, even if all parties are bound by the forum-selection clause, the present action is outside the scope of the clause because Bent's principal claims "arise under" New York Business Law, rather than the FAs. Bent Br. 9. That argument fails, because the forum-selection clause in the FAs expressly encompasses "any actions arising out of *or related to* this Agreement [or the Addendum]," except certain specified actions initiated by Zounds. FA ¶¶ 22(D), (E); Addendum ¶ 17 (emphasis added).

That provision encompasses the claims here.  "The Second Circuit has endorsed an expansive reading of the scope of forum-selection clauses, in keeping with the policy favoring their use."  *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09 Civ. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)).  Such clauses have been construed broadly to encompass actions other than for breach of contract, as well as actions by non-signatories.  *See Roby*, 996 F.3d at 1361 (holding that forum-selection clause encompassing claims "relating to" and "in connection with" plaintiffs' contracts covered their securities and RICO claims against non-signatories); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (holding that antitrust claim "undoubtedly ar[ose] . . . from the agreement," where the gist of plaintiff's claim was that defendant wrongfully terminated the agreement).  Moreover, courts in this District have consistently enforced forum-selection clauses similar to that here to transfer non-contractual claims in disputes relating to franchise agreements.  *See Luv2bfit, Inc. v. Curves Int'l*, *Inc.*, No. 06 Civ. 15415 (CSH), 2008 WL 4443961, at *7 (S.D.N.Y. Sept. 29, 2008) (transferring franchisees' claims of misrepresentation and violation of the NYFSA); *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, No. 03 Civ. 10027 (RWS), 2004 WL 1110423, at *5 (S.D.N.Y. May 19, 2004) (transferring RICO, Sherman Act, Clayton Act, Robinson-Patman Act, and fraud claims based on forum-selection clause in franchise agreement).

Here, the language of the forum-selection clause readily covers all of Bent's claims— each of which clearly relates to the FAs and Addendum.  All four of Bent's claims implicate the business relationship between Bent and Zounds under the FAs, not to mention Bent's rights and Zounds' obligations under the agreements.  *See Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2015 WL 6516787, at *3

(S.D.N.Y. Oct. 28, 2015) (plaintiff's claims for conversion, tortious interference, fraudulent inducement, negligent misrepresentation and slander of title all "ar[o]se from the business relationship created by the [underlying contract]," and thus came under the forum-selection clause); *Young Women's Christian Ass'n of U.S., Nat. Bd. v. HMC Entm't, Inc.*, 91 Civ. 7943 (KMW), 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992) (unfair competition and trademark infringement claims were within scope of forum-selection clause because resolution of the claims would "require consideration of the contract and of the parties' respective rights pursuant to the contract"). Therefore, Zounds has satisfied all three requirements set forth by the Second Circuit in *Phillips*, 494 F.3d at 383, and the forum-selection clause is presumptively enforceable.[4]

### 4.  Bent Has Not Rebutted the Presumption of Enforceability

Once a forum-selection clause has been shown presumptively enforceable, a party seeking to invalidate that clause must "make a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383–84).

Bent makes no such showing here. He does not argue, for instance, that the law to be applied in the District Court for Arizona is fundamentally unfair, or that trial there would be "so difficult and inconvenient that [Bent] effectively [would] be deprived of his day in court." *Phillips*, 494 F.3d at 392. The inconvenience that traveling to Arizona might entail is not sufficient. *See, e.g.*, *Carnival Cruise*, 499 U.S. 585, 594–95 (1991) (enforcing forum-selection

---

[4] Because Bent and the three moving defendants are bound by the mandatory forum-selection clause in the FAs, as incorporated in the Addendum, the Court has no occasion to address whether the parties are also bound by the forum-selection clause in the Guaranties.

clause requiring Washington State residents to pursue their action in Florida); *Effron*, 67 F.3d at 10 ("[A] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel." (internal quotation marks and citation omitted)).

Nor does Bent argue that the forum-selection clause is the product of fraud or overreaching. On the contrary, Bent, a self-described "successful businessman," *see* Compl. ¶ 10, was assisted by counsel in reviewing and negotiating the FAs and the Addendum. Zounds Br. 3; Essa Aff. ¶¶ 8–12. And allegations that a contract as a whole is tainted by fraudulent inducement are not enough to invalidate a forum-selection clause "where, as here, the plaintiff has not alleged fraudulent inducement with respect to the forum-selection clause itself." *Brodsky v. Match.com LLC*, No. 09 Civ. 5328 (NRB), 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009) (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n.14 (1974); *Person v. Google*, 456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262 (JFK), 2004 WL 421793, at *4 (S.D.N.Y. Mar. 5, 2004)). Bent has, therefore, failed to make the "strong showing" of exceptional circumstances necessary to rebut the presumption of enforceability.

### B. Public Interest Considerations Do Not Outweigh the Enforceability of the Forum-Selection Clause

Once the Court finds a forum-selection clause valid, presumptively enforceable, and not unreasonable or unjust, "the only remaining inquiry is whether there are public interest considerations . . . that weigh against its enforcement." *Midamines SPRL Ltd.*, 2014 WL 1116875, at *3 (citing *Atl. Marine*, 134 S. Ct. at 581–82 & n.6). Such considerations are not present here.

Bent argues that New York's interest in enforcing its laws—specifically, the NYFSA and the New York Attorney General's ban of advance payments of franchise fees—outweighs application of the forum-selection clause here. However, as courts in this Circuit have repeatedly held, this interest is insufficient to overcome the presumptive enforceability of a forum-selection clause.

As a threshold matter, New York—like the Second Circuit Court of Appeals—has a "strong public policy of *enforcing* forum-selection clauses so that parties are able to rely on the terms of the contracts they make." *Brodsky*, 2009 WL 3490277, at *3 (citing *Micro Balanced Prods. Corp. v. Hlavin Indus. Ltd.*, 667 N.Y.S.2d 1 (1st Dep't 1997)) (emphasis in original); *Roby*, 996 F.2d at 1361. Courts in this Circuit have consistently held that New York's interest in protecting its franchisees does not trump its policy of enforcing forum-selection clauses. *See Luv2BFit*, 2008 WL 4443961, at *3; *Hellex Car Rental Sys. Inc. v. Dollar Sys.*, No. 04 Civ. 5580, 2005 WL 3021963, at *5 (E.D.N.Y. Nov. 9, 2005) ("[T]here is no support for the argument that New York franchise law precludes New York franchisees from agreeing to litigate disputes in other fora.").

*Luv2BFit* is particularly on point. In that case, franchisees of Curves International, Inc. ("Curves") brought claims against Curves for fraud and misrepresentation, including claims arising under the NYFSA. *Luv2BFit*, 2008 WL 4443961, at *2. Like Bent, the Curves franchisees sought to avoid enforcement of the forum-selection clause, which prescribed litigation in a Texas forum, by citing New York's policy interest in enforcing the NYFSA. *Id.* The court rejected that bid, concluding, after a thorough analysis of the history and purpose of the NYFSA, that enforcing a valid forum-selection clause "does not violate New York's public policy to protect its citizens from being fraudulently induced into franchise agreements." *Id.* at

\*3. Here, too, the Court rejects Bent's claim that New York public policy precludes enforcement of the forum-selection clause.

The Court, therefore, holds that the forum-selection clause contained in the FAs is enforceable.

## CONCLUSION

For the foregoing reasons, the Court holds that the forum-selection clause in the Franchise Agreements is valid and enforceable. The Court thus grants Zounds' motion to transfer all claims against Zounds Hearing, Zounds Inc., and Thomasson to the District of Arizona. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 21.

The Court is, however, mindful that there is a fourth defendant in this case, FranChoice, which is separate from the three defendants who have successfully pursued transfer of the claims against them. The interests of judicial efficiency would clearly be served were Bent's claims against FranChoice also transferred from this District to the District of Arizona, as otherwise Bent's claims arising out of the same controversy would proceed in two separate fora.

The Court accordingly directs all parties to meet and confer within one week of this decision, to determine whether all parties consent to the transfer of Bent's claims against FrancChoice to the District of Arizona. If there is not complete consent, all parties are directed to submit, within two weeks of this Order, briefs of up to 10 pages, setting out their views on the transfer of such claims, and addressing whether, in light of the transfer of the claims against the other defendants to the District of Arizona, Bent's claims against FranChoice should be transferred there as well. The Court directs the parties to take account of the factors governing discretionary transfers, *see, e.g.*, *Robertson*, 2011 WL 5175597, at \*3, and the factors considered on motions to sever, *see Deajess Med. Imaging, P.C. ex rel. Barry v. Geico Gen. Ins. Co.*, No. 03

Civ. 7388 (DF), 2005 WL 823884, at *2 (S.D.N.Y. Apr. 7, 2005) (quoting *Preferred Med. Imaging, P.C. v. Allstate Ins. Co.*, 303 F. Supp. 2d 476, 277 (S.D.N.Y.2004)) ("[I]n considering motions to sever, courts weigh several factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." (internal quotation marks and citations omitted)). The parties may also wish to consider whether the forum-selection clause in the FAs reaches Bent's claims against FranChoice.

Pending resolution of the forum in which Bent's claims against FranChoice will be heard, the Court stays the effect of today's ruling transferring Bent's other claims to the District of Arizona, so as to assure that all claims to be transferred to the District of Arizona are transferred simultaneously.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 30, 2015
      New York, New York