```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/12/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BRUCE R. BENT II,

                                Plaintiff,

            -v-

ZOUNDS HEARING FRANCHISING, LLC, ZOUNDS
HEARING, INC., SAMUEL L. THOMASSON, and
FRAN CHOICE, INC.,

                              Defendants.

------------------------------------------------------------------X

15 Civ. 6555 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In this fraud case, plaintiff's claims with respect to all but one defendant have been transferred to the District of Arizona, based on a binding forum selection clause. This decision addresses where the claims against the remaining defendant are to be heard.

Plaintiff Bruce Bent II brought this lawsuit against Zounds Hearing Franchising, LLC ("Zounds Hearing"), Zounds Hearing, Inc. ("Zounds Inc."), Samuel L. Thomasson, and FranChoice, Inc. ("FranChoice"), alleging violations of the anti-fraud provisions of the New York Franchise Sales Act (the "NYFSA"), N.Y. Gen. Bus. Law §§ 687, 691, as well as fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and breach of contract. On November 30, 2015, the Court granted the motion of Zounds Hearing, Zounds Inc., and Thomasson (collectively, the "Zounds Defendants"), to transfer Bent's claims against them to the District of Arizona, pursuant to a binding forum selection clause. FranChoice now moves for the transfer of Bent's claims against it to the District of Arizona for consolidation with Bent's

claims against the Zounds Defendants. Bent opposes that motion, and moves for the severance of his claims against FranChoice, so that they may be tried here.

For the following reasons, FranChoice's motion to transfer venue is granted, and Bent's motion for severance is denied.

## I.     Background[1]

### A.     Factual Background

The Court assumes familiarity with the facts set forth in the Court's November 30, 2015 decision, Dkt. 32, *reported at Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555 (PAE), 2015 WL 7721838, at *1 (S.D.N.Y. Nov. 30, 2015), and recites only those directly relevant to the pending motions.

Bent is a resident of New York State. Compl. ¶ 2. Zounds Hearing is an Arizona limited liability company, with a principal place of business in Arizona, which grants franchises for the right to own and operate a retail hearing aid business. *Id*. ¶ 3. Zounds Inc. is a Delaware corporation, with a principal place of business in Arizona, which offers and sells hearing aid devices to franchisees, and is the parent and sole member of Zounds Hearing. *Id*. ¶ 4. Thomasson is a resident of Arizona, the business development advisor and sole manager of Zounds Hearing, and the founder and CEO of Zounds Inc. *Id*. ¶ 5. FranChoice is a Minnesota corporation, with a principal place of business in Minnesota. *Id*. ¶ 6. FranChoice provides

---

[1] In deciding the parties' motions, the Court considers Bent's complaint, Dkt. 25, Ex. 1 ("Compl."); FranChoice's Affirmation in Support of Transfer, Dkt. 33 ("FranChoice Aff."); the Zounds Defendants' Brief in Support of Transfer, Dkt. 35 ("Zounds Br."); and Bent's Memorandum of Law in Opposition to Transfer, Dkt. 34 ("Pl. Br."). The Court also considers the exhibits and affidavits submitted in connection with the Zounds Defendants' original motion to transfer. Dkt. 22, Ex. 5 ("Essa Aff."); Dkt. 22, Exs. 2, 3 ("Franchise Agreement") ("FA").

franchise consulting services for prospective franchisees, and receives referral fees from franchisors, including Zounds.  *Id*. ¶ 6.

In summer 2013, Bent contacted FranChoice regarding his interest in purchasing a franchise.  *Id*. ¶ 11.  After submitting an inquiry to the FranChoice website, Bent was put in touch with Bob Johnson, a FranChoice consultant.  *Id.*  Bent alleges that, although Bent was initially interested in purchasing a food franchise, Johnson suggested that a Zounds franchise would present a better investment opportunity.  *Id.*  Bent alleges that Johnson, on behalf of FranChoice, represented that "the profit margins for Zounds franchises were significantly above average, that Zounds was the fastest growing franchise in the country, that Zounds franchises never failed, and that Zounds had the most advanced technology in hearing aids."  *Id.* ¶ 13.

On FranChoice's recommendation, Bent contacted Thomasson and other "Zounds-related individuals" to learn more about the Zounds franchise, and attended a discovery day at Zounds' headquarters in Arizona.  *Id*. ¶¶ 17–18; Essa Aff. ¶¶ 6–7.  On September 13, 2013, Bent executed franchise agreements (the "FAs") to buy 10 Zounds franchises for a total of $240,000.  Compl. ¶ 20.  Each FA contains a forum-selection clause that requires the parties to litigate "any actions arising out of or related to this Agreement" in Arizona.  FA ¶ 22(E).

Pursuant to the Addendum to the FAs, Bent wired Zounds an upfront payment of $240,000.  *Id*. ¶ 22; Essa Aff. ¶ 11.  However, Bent alleges, Zounds later failed to carry out its obligations under the FAs or to fulfill the promises made by the Zounds representatives in connection therewith.  Compl. ¶¶ 23–29.

With regard to FranChoice, Bent alleges that each representation made by Johnson was false, and that "Johnson had no reason to believe them to be true."  *Id.* ¶ 13.  In fact, Bent alleges, Zounds is the successor to an entity that went bankrupt in 2009; many Zounds franchises

3

have failed or are struggling; and numerous franchise owners have sued Zounds. *Id.* ¶ 14. Moreover, Bent alleges, at the time Bent spoke with Johnson, Zounds lacked an "in-the-ear" hearing aid product, which was "particularly critical in the New York City market." *Id.* ¶ 15.

### B. Procedural History

On July 28, 2015, Bent initiated this lawsuit in New York State Supreme Court, bringing claims against the Zounds Defendants for breach of contract, and against all defendants for (1) fraudulent and unlawful practices, in violation of N.Y. Gen. Bus. Law §§ 687, 691; (2) fraudulent misrepresentation and inducement; and (3) negligent misrepresentation. *Id*. ¶¶ 33–58.

On August 19, 2015, the Zounds Defendants filed a notice of removal pursuant to 28 U.S.C. § 1446.  Dkt. 1.  On August 27, 2015, FranChoice consented to the removal.  Dkt. 13.  On September 24, 2015, FranChoice filed a motion to dismiss the complaint.  Dkt. 16.  On October 1, 2015, the Zounds Defendants filed both a motion to transfer and a motion to dismiss the complaint.  Dkt. 21.

On October 6, 2015, the Court notified the parties that it would resolve the motion to transfer before considering, if necessary, the motions to dismiss.  Dkt. 24.  On November 30, 2015, the Court granted the motion to transfer Bent's claims against the Zounds Defendants to the District of Arizona, pursuant to the forum selection clause binding those parties.  Dkt. 32. The Court then solicited briefing on the issue of whether, in light of that ruling, Bent's claims against FranChoice should be transferred to the District of Arizona, as well.  *Id.* at 17–18.

On December 14, 2015, FranChoice submitted an affirmation in favor of transferring all of Bent's claims to the District of Arizona,[2] FranChoice Aff., and the Zounds Defendants submitted a memorandum of law in support, Zounds Br.  Defendants contend that the forum

---

[2] The Court treats this affirmation as a motion for transfer pursuant to 28 U.S.C. § 1404(a).

selection clause in the FAs compels the transfer of Bent's claims against FranChoice to Arizona, and that, in any event, the factors governing discretionary transfer and severance weigh in favor of transferring the action as a whole.  FranChoice Aff. ¶¶ 9, 12–17, 24; Zounds Br. 2–4, 6–9. The same day, Bent submitted a brief opposing transfer and requesting severance of his claims against FranChoice from those against the Zounds Defendants.[3]  Pl. Br.

## II. Motion to Transfer Venue

### A. Legal Standards Governing Transfer Under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . or to which all parties have consented."

In general, § 1404(a) gives district courts wide latitude to decide whether to transfer venue.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011).  In deciding a motion to transfer, a court should first inquire "whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion."  *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).

Assessing whether transfer is a valid exercise of discretion ordinarily requires the court to balance various factors, including:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity

---

[3] The Court treats Bent's submission both as an opposition to FranChoice's motion for transfer, and as a motion for severance pursuant to Federal Rule of Civil Procedure 21.

>with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *4; *see also Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) (quoting *Stewart*, 487 U.S. at 31). A forum-selection clause is "presumptively enforceable" if the moving party can demonstrate that: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). If these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid." *Martinez v. Bloomberg LP*, 740 F.3d 211, 221 (2d Cir. 2014) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).

**B.     Analysis**

    **1.     The Forum Selection Clause in the FAs Does Not Compel Transfer of Bent's Claims Against FranChoice**

In its November 30, 2015 decision, the Court held that Bent's claims against the Zounds Defendants should be transferred to Arizona pursuant to the presumptively enforceable forum selection clause contained in the FAs. Defendants now argue that the forum selection clause compels the transfer of Bent's claims against FranChoice, as well. That argument fails, because the forum selection clause does not encompass Bent's claims against FranChoice.

The Second Circuit has held that "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum-selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Rather, a non-signatory will be bound where he is found to be "closely related" to a signatory to the agreement, such that "the non-signatory's enforcement of the forum selection clause is 'foreseeable.'" *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013). That is not the case here.

In most cases where a non-signatory has been found sufficiently "closely related" to a signatory to a contract, such that a forum selection clause contained therein could be enforced against him, the non-signatory played an active role in the transaction, *see, e.g.*, *Firefly Equities, LLC v. Ultimate Combustion Co., Inc.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) (holding company's president sufficiently "closely related" to signatory company, in part because he signed contract in his representative capacity), or was a principal of the signatory company, *see Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 311 (S.D.N.Y. 2012) (corporate officer was bound by forum-selection clause in corporation's contract, where he participated in, and stood to benefit from, the underlying transaction); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (finding CFO of signatory company bound by forum selection clause).

Here, in contrast, "[w]hile there is certainly a business relationship between [Zounds Hearing] and [FranChoice], it is not the type of close business relationship that other courts have found imperative." *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 259 (E.D.N.Y. 2013), *amended* (Mar. 23, 2013). First, FranChoice did not play a direct role in the execution of the

7

FAs.  Second, as an independent contractor of Zounds Hearing, FranChoice is not among the actors designated as a third-party beneficiary to the FAs.  *See* FA ¶ 22(F) ("Franchisor's officers, directors, shareholders, agents and/or employees are express third party beneficiaries of the provisions of this agreement, including the dispute resolution provisions set forth in this Section.").  Third, there is no indication that Bent perceived FranChoice to be acting as an agent of Zounds Hearing, or that he was even aware of the referral fee arrangement between the two companies.

Accordingly, the Court cannot infer that it was foreseeable to Bent that FranChoice might seek to enforce the forum selection clause in an action such as this.  The forum selection clause, therefore, does not support the transfer of Bent's claims against FranChoice.

### 2. Discretionary Transfer is Appropriate

Although the forum selection clause does not compel transfer of Bent's claims against FranChoice, the Court finds that transfer of this entire action to Arizona is nonetheless appropriate under the multi-factor test governing § 1404(a).

#### a. Bent's Claims Against FranChoice Could Have Been Brought in the District of Arizona

Bent's claims against FranChoice could have been brought in the District of Arizona because that District has personal jurisdiction over FranChoice and is an "appropriate venue" for Bent's claims.  *Robertson*, 2011 WL 5175597, at *3 ("A court may only transfer an action pursuant to § 1404(a) if the transferee district has personal jurisdiction over the defendants and the transferee district is an appropriate venue."); *Dostana Enters. LLC v. Fed. Express Corp.*, No. 00 Civ. 747 (RWS), 2000 WL 1170134, at *2 (S.D.N.Y. Aug. 16, 2000) ("An action 'could have been brought' in another forum if the defendant would have been amenable to personal

jurisdiction in the transferee forum at the time the action was commenced and venue is proper there.").

The District of Arizona has personal jurisdiction over FranChoice by virtue of FranChoice's express consent.  FranChoice Aff. ¶ 8 ("FranChoice consents to the transfer of the claims posed against it by Bent to the District of Arizona."); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (an out-of-state defendant may give "express or implied consent to the personal jurisdiction of the court") (internal quotation marks and citation omitted).

The District of Arizona also constitutes an appropriate venue for the litigation of Bent's claims against FranChoice.  Section 1391 of Title 28 provides, in pertinent part, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).  In determining venue, "courts are not, in general, required to determine the 'best venue,' but merely a logical one with a substantial connection to the litigation." *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59 (2d Cir. 2007) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992)).

As discussed more fully below, Bent's claims against FranChoice hinge on (1) the nature of the referral relationship between FranChoice and Zounds Hearing, which is located in Arizona; and (2) Bent's communications with the Zounds Defendants, which occurred in Arizona.  The District of Arizona thus bears a "substantial connection" to this litigation, making it an appropriate venue for Bent's claims.  *Polyvision Corp.*, 474 F.3d at 59; *see U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153–54 (2d Cir. 2001) (communications relevant to dispute that were directed to venue are sufficient to make it proper venue); *Sabilia v.*

9

*Richmond*, No. 11 Civ. 739 (JPO) (MHD), 2011 WL 7091353, at *5 (S.D.N.Y. Oct. 26, 2011), *report and recommendation adopted*, 2012 WL 213656 (S.D.N.Y. Jan. 24, 2012) (Southern District of New York was proper venue for action involving claims of, *inter alia*, fraudulent misrepresentation, where "the various acts giving rise to plaintiffs' claims, including [one defendant's] communications to the other defendants, . . . occurred in this district"); *Shpak v. Curtis*, No. 10 Civ. 1818 (RRM), 2011 WL 4460605, at *6 (E.D.N.Y. Sept. 26, 2011) (selected forum bore "sufficient nexus to the transactions and occurrences underlying the plaintiffs' claims," where "representations underlying the alleged fraud . . . were made in [that district]," and plaintiffs "allege[d] numerous communications with the forum state").

### b. Transfer is an Appropriate Exercise of the Court's Discretion

Having found that Bent's claims against FranChoice could have been brought in the District of Arizona, the Court considers whether transfer is an "appropriate exercise of the Court's discretion." *Robertson*, 2011 WL 5175597, at *3. Here, the relevant factors under § 1404(a) overwhelmingly support transferring this action as a whole to the District of Arizona.

#### i. The locus of operative facts

For several reasons, the locus of the facts undergirding Bent's claims against FranChoice is Arizona, as opposed to New York. Bent has not alleged that FranChoice's misrepresentations occurred in New York. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (internal quotation marks and citation omitted); *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006)). Here, the alleged misrepresentations were made by Johnson, a franchise consultant of FranChoice, which is headquartered in Minnesota. Compl. ¶ 11. Although the

10

complaint does not specify where Johnson was located at the time he communicated with Bent, the most reasonable inference is that the alleged misrepresentations were transmitted from, and thus "occurred" in, Minnesota. There is no basis to infer that they were made in New York.

In contrast, a number of the key events underlying Bent's claims occurred, at least partially, in Arizona. For instance, the communications establishing the referral relationship between FranChoice and Zounds Hearing were made between parties in Minnesota (FranChoice) and Arizona (Zounds Hearing). FranChoice Aff. ¶ 13. And FranChoice's defenses—including that (1) it was not involved in representations made to Bent by the Zounds Defendants, (2) it did not make representations to Bent when he was deciding whether to purchase a Zounds franchise, and (3) Bent could not have reasonably relied on FranChoice's representations, if made, in light of his personal investigation into Zounds, *see id*. ¶ 13; Dkt. 18, at 11–14—all implicate events in Arizona. Finally, the majority of FranChoice's alleged misrepresentations revolve around corporate information pertaining to Zounds' hearing-aid business, which is located, if anywhere, in Arizona.

For these reasons, the Court concludes, substantially more events material to Bent's claims against FranChoice occurred in or relate to Arizona than New York. This factor thus supports transfer to Arizona.

### ii.     Trial efficiency and the interests of justice

The interests of justice and trial efficiency provide a compelling basis for transferring all of Bent's claims to Arizona. "Transfer of an action to a district where a related case is pending enables more efficient conduct of pretrial discovery, [and] saves witnesses time and money in both trial and pretrial proceedings . . . thereby eliminating unnecessary expense to the parties while at the same time serving the public interest." *Foothill Capital Corp. v. Kidan*, No. 03 Civ. 3976 (RMB), 2004 WL 434412, at *4 (S.D.N.Y. Mar. 8, 2004) (internal quotation marks and

11

citation omitted); *accord Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968) (recognizing a "strong policy favoring the litigation of related claims in the same tribunal" in order to promote judicial efficiency); *Stroud Prods. & Enters. v. Castle Rock Entm't*, No. 07 Civ. 8638 (HB), 2009 WL 2391676, at *3 (S.D.N.Y. Aug. 4, 2009) ("[T]rial efficiency and the interests of justice weigh heavily in favor of litigating all related causes of action . . . in a single forum." (citation omitted)). Such is especially true where, as here, the claims have already been joined in a single action, and there is substantial commonality of issues underlying the plaintiff's causes of action against all defendants. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

Here, although Bent's claims against FranChoice and the Zounds Defendants are not identical, there will unavoidably be significant overlap in the relevant evidence and witnesses, as reflected in Bent's decision to bring a common case against these defendants. *See Mfrs. Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161, 167 (S.D.N.Y. 1992) ("The interests of justice require that the cases be related, not identical."). It is also possible, if not likely, that FranChoice and the Zounds Defendants will bring crossclaims against one another for indemnity and/or contribution. Zounds Br. 5 (noting the "possibility of cross-claims"); *see Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) ("[I]t is well established that the ability to implead a third-party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer.") (collecting cases).

Under these circumstances, transfer will "substantially advance[ ] the interests of fairness, efficiency and judicial economy" by preventing duplicative proceedings, avoiding

inconsistent results, and "reducing the overall burden on the parties, non-party witnesses and the judicial system." *Id.* This factor, too, therefore strongly supports transfer.

### iii. The convenience of the witnesses

The convenience of witnesses, frequently described as the single most important § 1404(a) factor, *see, e.g.*, *Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009); *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009), also favors transfer of all of Bent's claims to the District of Arizona.

Here, three areas of witness testimony will be implicated if Bent's claims against FranChoice reach trial: (1) testimony as to the statements or misrepresentations allegedly made by FranChoice, (2) testimony as to the extent to which Bent reasonably relied on any such misrepresentations, and (3) testimony bearing on the truth or falsity of FranChoice's statements, and the factual basis on which they were made. It is reasonable to expect that witnesses as to the latter two issues will be dominantly sited in Arizona, where Zounds Hearing is headquartered and the Zounds discovery day was held. In contrast, there is no indication that New York would present a more convenient forum than Arizona for Johnson, who, aside from Bent, will be the central witness as to the first point. Tellingly, Bent does not identify a single witness other than himself for whom New York is a more convenient forum.

Moreover, to the extent that any witnesses' testimony pertains to Bent's claims against both FranChoice and the Zounds Defendants—as the Court expects will be the case for many, if not most, witnesses—those witnesses will be spared much inconvenience by being called to testify in a single trial in a single location. *See DISH Network, L.L.C. v. Am. Broad. Cos., Inc.*, No. 12 Civ. 4155 (LTS), 2013 WL 1091318, at *3 (S.D.N.Y. Mar. 15, 2013) ("[B]ecause the contract interpretation dispute between NBCU and DISH will be heard in the California Action in any event, any potential inconvenience to some witnesses is significantly outweighed by the

convenience of providing testimony in a single consolidated action." (internal quotation marks and citation omitted)). Accordingly, this factor, too, strongly favors transfer.[4] *See Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, No. 04 Civ. 9266 (KMK), 2005 WL 236440, at *5 (S.D.N.Y. Feb. 1, 2005) (this factor "weighs heavily in favor of transfer" where plaintiff's inconvenience would be "minor" in comparison to that which defendants would endure absent transfer).

                        iv.       *The convenience and relative means of the parties*

Neither Bent nor FranChoice has asserted that undue financial hardship would ensue were the litigation to proceed in the other's preferred forum. But, because trying all claims in a common forum is far more efficient than bifurcating them, transfer to Arizona will save money and enhance convenience for all parties. The relative convenience of the parties, therefore, favors transfer.

FranChoice will be required to travel from Minnesota to present its defense regardless of which venue the Court chooses. Given the possibility that the Zounds Defendants would implead FranChoice in the Arizona litigation, *see* Zounds Br. 5, or that FranChoice personnel would be required to testify as witnesses there, transfer of the remaining claims to the District of Arizona for a common trial presents the more convenient and cost-effective forum for FranChoice.

As to Bent, any inconvenience that he will experience from being required to litigate his claims against FranChoice in Arizona is minor, given that he is already destined to travel to

---

[4] The factor of availability of process to compel the attendance of unwilling witnesses is neutral, as neither party has yet identified witnesses whose testimony would likely need to be compelled. *See SBAV LP*, 2013 WL 3467030, at *11.

Arizona to litigate his claims against the Zounds Defendants. It will almost certainly be *less* costly and *more* convenient for Bent to efficiently litigate all of his claims in one forum, than to litigate some in Arizona and others in New York. *See McCain v. Racing*, No. 07 Civ. 5729 (JRS), 2007 WL 2435170, at *4 (S.D.N.Y. Aug. 27, 2007) (finding that, although plaintiff contested transfer, it would "plainly be more convenient" and "less costly" for both parties to litigate related claims in a single forum); *Bruhl v. PriceWaterhouseCoopers Int'l, Ltd.*, No. 03 Civ. 6644 (CSH), 2004 WL 447232, at *3 (S.D.N.Y. Mar. 10, 2004) (finding any inconvenience to defendant "more apparent than real," where defendant was already a litigant in a related case in the transferee district). Indeed, a unitary trial will undoubtedly be shorter than the combined length of two proceedings in different fora, generating fewer expenses, including counsel fees and disbursements. The convenience and relative means of the parties, therefore, support transfer.

>    *v.*   *The location of relevant documents and sources of proof*

The Court notes that the majority of documents bearing on Bent's claims against FranChoice will likely be located at Zounds Hearing's corporate headquarters in Arizona. However, given electronic discovery, the location of relevant documents and relative ease of access to sources of proof do not materially favor either venue. *See Guardian Life Ins. Co.*, 2011 WL 3678134, at *3; *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).

>    *vi.*   *The forum's familiarity with governing law*

The fact that Bent brings, among other claims, claims under the NYFSA, N.Y. Gen. Bus. Law §§ 687, 691, favors this District, but only slightly. "A forum's familiarity with the governing law . . . is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Posven*, 303 F. Supp. 2d at

15

405. Here, the parties have not indicated that any complicated or novel issues of law are implicated by Bent's claims, and the Court is confident that the courts in the District of Arizona can ably apply this New York statute. *See id.* This factor therefore merits little weight.

                vii. *The weight accorded to the plaintiff's choice of forum*

Bent's choice of forum is the sole factor that weighs significantly against transfer to Arizona. Under the circumstances, the Court does not find this factor dispositive.

Although a plaintiff's choice of forum is "presumptively entitled to substantial deference," *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004), it is accorded less weight where "the connection between the case and the chosen forum is minimal," *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010); *accord Kreinberg*, 496 F. Supp. 2d at 330 ("[W]hen the operative facts have few meaningful connections to the plaintiff's chosen forum . . . the importance of the plaintiff's choice of forum measurably diminishes.") (collecting cases); *Stein v. Microelectronic Packaging, Inc.*, No. 98 Civ. 8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. July 26, 1999).

As discussed above, the vast majority of operative facts here occurred outside of New York, and Arizona presents, on balance, the more convenient forum for all parties and witnesses to this action. Moreover, the interests of fairness and judicial efficiency militate strongly in favor of transfer, particularly given that it was Bent's decision to pursue his claims against the Zounds Defendants and FranChoice together in the same action.

Accordingly, the Court finds that the other relevant considerations substantially outweigh Bent's choice of forum.[5] Discretionary transfer is, therefore, an appropriate exercise of the Court's discretion.

---

[5] In so holding, the Court notes that in many other cases, the interests served by consolidating claims in the same forum have been found so compelling as to outweigh even a binding forum

### III. Motion for Severance

#### A. Legal Standards Governing Severance Under Federal Rule of Civil Procedure 21

In an alternative bid to keep his claims against FranChoice in this venue, Bent seeks severance of those claims from the claims he brought against the Zounds Defendants. Federal Rule of Civil Procedure 21 permits a court to "sever any claim against a party." "The decision [as to] whether to grant a severance motion is committed to the sound discretion of the trial court." *A & E Prod. Group v. The Accessory Corp.*, No. 00 Civ. 7271 (LMM), 2002 WL 1041321, at *1 (S.D.N.Y. May 23, 2002) (quoting *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d. Cir. 1988)).

In considering a motion to sever, the Court must weigh several factors, including "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Deajess Med. Imaging, P.C. ex rel. Barry v. Geico Gen. Ins. Co.*, No. 03 Civ. 7388 (DF), 2005 WL 823884, at *2 (S.D.N.Y. Apr. 7, 2005) (quoting *Preferred Med. Imaging, P.C. v. Allstate Ins. Co.*, 303 F. Supp. 2d 476, 277 (S.D.N.Y. 2004)).

---

selection clause favoring a different forum. *See, e.g.*, *Capital Venture Int'l v. Network Commerce, Inc.*, No. 01 Civ. 4390 (JSM), 2002 WL 417246, at *2 (S.D.N.Y. Mar. 15, 2002); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668, 671–72 (S.D.N.Y. 1999) (collecting cases). There is, of course, no such agreement favoring New York here.

**B.     Analysis**

The same factors that overwhelmingly support transfer counsel against the severance of Bent's claims against FranChoice from those he brought against the Zounds Defendants. Indeed, all five factors relevant under Rule 21 disfavor severance here.

First, Bent's claims against both FranChoice and the Zounds Defendants all arise from one set of events: Bent's decision, following FranChoice's recommendation, to invest in Zounds franchises, and the communications that led to it. And Bent's claims against all defendants will present common questions of law—Bent asserts three identical causes of action against both FranChoice and the Zounds Defendants, *see* Compl. ¶¶ 36–38, 40–53—and fact (*e.g.*, the extent to which Bent reasonably relied on the alleged misrepresentations by FranChoice and the Zounds Defendants, the extent to which Bent sustained injury, etc.). Accordingly, there is certain to be great overlap in the witnesses and documentary proof on which both sets of claims will turn. *Kirk v. Metro. Transp. Auth.*, No. 99 Civ. 3787 (RWS), 2001 WL 25703, at *3 (S.D.N.Y. Jan. 10, 2001) (finding that "overlap in facts, evidence, and witnesses" weighed against severance).

Moreover, as reviewed above, severance would hinder—not serve—the interests of justice and judicial efficiency. By forcing FranChoice and the Zounds Defendants to proceed in separate fora, severance might also create a risk of inconsistent outcomes, and potentially complicate settlement discussions—both of which would prejudice the defendants. *See Lutz v. Buono*, No. 05 Civ. 4879 (GAY), 2009 WL 3364032, at *1 (S.D.N.Y. Oct. 16, 2009) (finding joint trial "prudent in order to avoid the potential problem of inconsistent verdicts"). While Bent insists that he will be further prejudiced by the transfer of his claims against FranChoice, *see* Pl. Br. 3, he overlooks the burden that severance would impose on the defendants, witnesses, and the judiciary.

18

Having carefully considered all of the relevant factors, the Court finds that the interests promoted by allowing this lawsuit to proceed intact outweigh any prejudice that Bent might endure as a result of transfer. Bent's motion to sever his claims against FranChoice from the remaining claims in this action is, therefore, denied.

## CONCLUSION

For the foregoing reasons, FranChoice's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is granted, and Bent's motion to sever his claims against FranChoice pursuant to Federal Rule of Civil Procedure 21 is denied. The Clerk of Court is respectfully directed to transfer this case, in its entirety, to the District of Arizona.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 12, 2016
       New York, New York